IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| LARRY D. STEELMAN | § | |
| | § | CIVIL ACTION NO. 9:05cv244 |
| JERRY BAKER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL AND REMAND

The plaintiff Larry Steelman, a former inmate of the Houston County Jail proceeding *pro se*, filed this lawsuit in state court complaining of alleged violations of his rights. The lawsuit was removed to federal court by the Defendants.

An evidentiary hearing was conducted on February 15, 2006, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

Steelman testified that he went into the Houston County Jail on an arrest warrant from the county jail in Kansas City, Missouri, but that prior to his incarceration in Missouri, he had been a resident in a nursing home for several months. He said that he had a car accident in June of 2002 which resulted in back injuries, and that he was wanted in Houston County on charges of driving while intoxicated.

When he arrived at the Houston County Jail, Steelman said, he was on a number of medications, but these were not brought with him from Kansas City. He arrived in the jail on a Sunday, and asked a jailer what he was going to do without his medications. The jail records show that Steelman was booked in on February 8, 2004, and then left at some point, apparently for Smith County; the Houston County jail records show that he was returned to the custody of Houston

County on May 28, 2004.[1] Because February 8, 2004, was a Sunday, but May 28, 2004, is a Friday, it is apparent that Steelman was talking about that date in his testimony.

Steelman said that no doctor or emergency medical technician was available that Sunday when he came into the jail.  He conceded that his prescriptions were filled the next day, and pharmacy records offered into evidence without objection showed that Steelman received prescriptions for hydrocodone (a pain medication), spironolactone (a blood pressure medication), and valsartan (another blood pressure medication) on February 9, the day after he entered the jail. Steelman continued to receive prescriptions for these and other medications throughout his incarceration in Houston County; the pharmacy records show that during his confinement in the Houston County Jail, Steelman received at least 15 different medications, including hydrocodone, erythrocin, ketorolac, fluoxetine, amoxicillin, allegra, lactulose, chlorex, metoprolol, tramadol, neurontin, spironolactone, carisoprodol, valsartan, and tizanidine.  These records also show that Steelman's prescriptions for these various medications were refilled no fewer than 68 times.

While Steelman did not deny that he received prescription refills, he said that these refills sometimes came two or three days after he had run out of medication.  He also said that sometimes he would get "shorted" on his medications, and when he was complain about this, the guards said that "they would check on it," but this meant that nothing would be done.

During the Labor Day weekend, Steelman said, his metaprolol ran out on Friday, and other medications expired as well.  A jailer told him that the pharmacy would be closed until Tuesday. He said that on Friday afternoon, one jailer was "running around" trying to get his medications renewed, but was too late, because the pharmacy in Crockett had already closed.

The following Tuesday, Steelman said, he got out of bed and "blacked out." He stated that he injured his head, but was not taken to the hospital until that afternoon.

---

[1] The on-line judicial records of Smith County show that Steelman entered a guilty plea to a Class B misdemeanor on May 24, 2004, a few days before his return to Houston County.

Steelman says that someone told him that the delay was so that he could be sent to the clinic in Grapeland, twenty miles away, in order to save the county $15.00, but he conceded that he did not know whether or not this was true.

Steelman said at first that he was suing Baker because of Baker's position of authority, but then indicated that he believed that Baker was responsible for his not being sent to the emergency room on September 7, 2004, in a more timely manner. He attributed this to "negligence" on Baker's part, but could not point to any specific actions taken or not taken by Baker in this regard.

On cross-examination, Steelman said that he went to the emergency room about 10 hours after passing out on September 7, but acknowledged that he did not know what time he had passed out. He said that an officer named Joyce had told him that Baker said to wait before taking him, but conceded that he did not see or speak to Baker that day. Steelman again described the incident as "a simple case of medical negligence."

Steelman said that he had talked to Baker on other occasions, and that Baker was usually nice to him. He said that he had Baker had a rocky relationship when he first arrived, but that they got over this and frequently spoke. He said that he had nothing against Baker personally, but that he had been through a lot of pain and suffering.

Baker testified that he was the jail administrator for the Houston County Jail. He said that over the Labor Day weekend in 2004, he left work on Friday and returned on Tuesday. No one told him that Steelman had run out of medications, or that he had passed out on Tuesday. Baker said that jailers pass out medications and that if an inmate is about to run out, the jailers are supposed to call the pharmacy and order more.

Baker said that Steelman was not a typical inmate because of his physical condition. He said that he and other jailers felt sorry for Steelman because Steelman had been in a nursing home before coming to the jail, and that most of them felt as though Steelman should not be in the jail because of his condition. He said that he did favors for Steelman which were not done for other inmates, including giving Steelman a chair to sit on so that he could take a shower, allowing him out of his

cell to sit at the desk and talk to people, and taking him out in the back a few times to smoke. Baker said that he also brought Steelman some books to read, which he did not do for other inmates. Steelman was offered the chance to cross-examine Baker, but declined.

Ronnie Jordan, the chief deputy at the Houston County Jail, testified that any jailer could send inmates to the emergency room, and that jailers were trained to err on the side of caution in making this decision. He said that Steelman was taken to the hospital by Morris Luker, a deputy who is also an emergency medical technician; Jordan opined that Luker "would not wait all day" before taking a prisoner with a head injury to the hospital.

Jordan said that inmates were advised of the procedures for requesting medical care, but Steelman said that he had never received a jail rule book and had never been advised of any such procedures. However, he did not dispute that he had filled out medical request forms in accordance with the jail's procedures.

## Legal Standards and Analysis

This lawsuit was originally filed in the state district court of Houston County, but was removed to federal court pursuant to 28 U.S.C. §1441. The named defendants in the lawsuit are Jerry Baker, the jail administrator, and the Houston County Sheriff's Department. The sheriff's department has no separate legal existence, apart from the county, and thus cannot be sued in its own name. Darby v. Pasadena Police Department, 939 F.2d 311, 313 (5th Cir. 1991); *see also* Shelby v. Atlanta, 578 F.Supp. 1368, 1370 (N.D. Ga. 1984); Post v. Ft. Lauderdale, 750 F.Supp. 1131 (S.D. Fla. 1990); Missouri ex rel. Gore v. Wochner, 475 F.Supp. 274, 280 (E.D. Mo. 1979), *aff'd* 620 F.2d 183 (8th Cir. 1980). Steelman's federal constitutional claims against the Houston County Sheriff's Department are thus without merit and must be dismissed.

Steelman's claim against Baker revolves around deliberate indifference to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th

Cir. 1989).  However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim.  Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991).  Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action.  Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993).  The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs.  Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later.  The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment."  Estelle v. Gamble, 429 U.S. 97, 107 (1972).  And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Steelman has failed to show that Baker, as jail administrator, was deliberately indifferent to his serious medical needs. The jail records show that Steelman was provided with numerous medications, for which the prescriptions were regularly renewed. While there may have been at times a brief delay in getting some of these medications renewed, and Steelman also said that he sometimes did not get all the medications required (although he was not specific as to dates, times, or any harm suffered in this regard), he has failed to show that these apparently isolated incidents rose to the level of constitutionally deliberate indifference to his medical needs, rather than negligence or carelessness. *See* Mayweather, 958 F.2d at 91; Graves, 1 F.3d at 320.

Nor has Steelman shown that he was the victim of deliberate indifference with regard to the fall which he suffered on September 7, 2004. He conceded that he did not know what time he fell, or what time he notified the jail staff, so it is not clear how long he waiting to be transported to the hospital. Steelman acknowledges that he was taken to the hospital and examined by medical staff the same day. He says that someone told him that he had to wait several hours to go to the hospital and that he was taken to Grapevine so that the county could save $15.00, but did not know if this was true; however, the Fifth Circuit has observed that speculation is not sufficient to create an issue of material fact. Waggoner v. City of Garland, Texas, 987 F.2d 1160 (5th Cir. 1993). Even if the delay was due to negligence or carelessness, Steelman has not shown that his rights under the U.S. Constitution were violated.

In addition, Steelman has not shown any personal involvement on the part of Baker, the sole individual named as a Defendant. The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). To the extent that Steelman sued Baker because of Baker's position of authority as jail administrator, his lawsuit under Section 1983 must fail.

The Fifth Circuit explained that a supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987). In this case, Steelman has not met any of the three prerequisites. He has not shown that Baker was involved in a constitutional deprivation; even assuming that the delay in taking him to the hospital amounted to a constitutional violation, he acknowledged that he did not see or speak to Baker that day. Although he says that he was told that Baker was responsible for the delay, he acknowledges that he does not know if this was true, and it is hearsay in any event. Similarly, Steelman has not shown that wrongful conduct by Baker was causally connected to a constitutional violation.

Nor has Steelman shown that Baker implemented a deficient policy which was the moving cause behind a constitutional violation. Instead, the evidence showed that the policy of the jail was that any jailer had the authority to have an inmate transported to the hospital, and that jailers were trained to err on the side of caution in making this determination. There is no showing that this policy was deficient, much less that it was the moving cause behind a constitutional deprivation. Steelman's claims under the U.S. Constitution are without merit.

## The State Law Claims

As noted above, this lawsuit was originally filed in state court, and was removed to federal court because federal constitutional claims were implicated. At the hearing, Steelman made clear that his claims generally revolved around negligence, a state law issue. *See, e.g.*, Baker v. McCollan, 443 U.S. 137, 146 (1979).

This Court has jurisdiction over the state-law claims under the doctrine of supplemental jurisdiction. This doctrine is codified in 28 U.S.C. §1367, for all civil actions filed on or after December 1, 1990. See Public Law 101-650, Section 310(c); Whalen v. Carter, 954 F.2d 1087, 1097 n.10 (5th Cir. 1992).

28 U.S.C. §1367(a) reads as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (b) refers to actions filed under diversity jurisdiction and thus is not applicable in this case. Subsection (c) reads as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) The claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

Here, the Court acquired original jurisdiction, through removal, based on the plaintiff's claim of a violation of federal law under 42 U.S.C. §1983 and the Eighth Amendment to the U.S. Constitution. However, Steelman's federal constitutional claims - which formed the basis of federal jurisdiction - are without merit, as explained above. This Court therefore declines supplemental jurisdiction over the plaintiff's state law claims, deferring instead to the laws and judicial processes of the State of Texas. 28 U.S.C. §1367(c)(3); <u>Slaughter v. Allstate Insurance Co.</u>, 803 F.2d 857 (5th Cir. 1986) (supplemental jurisdiction should not ordinarily be exercised where there is no federal claim). Under the circumstances, Steelman's negligence claims, as well as any other claims which he may have arising solely under state law, should be remanded to the 3rd Judicial District Court of Houston County, Texas, for such other and further proceedings as that Court may deem appropriate. *See*

Schexnayder v. Entergy Louisiana, Inc., 394 F.3d 280, 283 (5th Cir. 2004); Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 336 (5th Cir. 1999).[2]

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Steelman's federal constitutional claims lack any arguable basis in law and fail to state a claim upon which relief may be granted.  For this reason, these claims may be dismissed with prejudice as frivolous.  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). Because Steelman has no surviving claims under federal law, his negligence claims, as well as any other claims which he may have which arise solely under state law, should be remanded to the state court for such other and further proceedings as that court deems appropriate.  This Court, the federal court for the Eastern District of Texas, offers no opinion as to the merits of any claims which Steelman may have which arise solely under state law.  It is accordingly

ORDERED that the federal constitutional claims in the above-styled civil action are hereby DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

---

[2] Pursuant to Giles, this is not a 28 U.S.C. 1447(c) remand.

ORDERED that the Plaintiff's remaining state-law claims, including but not limited to his claims of negligence, are hereby REMANDED to the 3rd Judicial District Court for Houston County, Texas, for such other and further proceedings as that court may deem appropriate. 28 U.S.C. §1367(c)(3). This order includes any state-law claims which Steelman may have against the Houston County Sheriff's Department. Finally, it is

ORDERED that any and all motions which may be pending in this case are hereby DENIED, subject to re-urging upon remand to the state court.

So **ORDERED** and **SIGNED** this **28** day of **February, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE